## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## EASTERN DIVISION

PENINSULA GAMING COMPANY, LLC d/b/a EVANGELINE DOWNS in its capacity as fiduciary of the Peninsula Gaming Company, LLC d/b/a Evangeline Downs Health Care Plan,

    Plaintiff,

vs.

BRAD RABALAIS and GAUTHIER, HOUGHTALING & WILLIAMS, LLP,

    Defendants,

ABC CORPORATION,

    Nominal Defendant.

No. 10-CV-1030-LRR

**ORDER**

_____

### *TABLE OF CONTENTS*

*I.*     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*    *PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*   *SUBJECT MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . *3*

*IV.*   *RELEVANT FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
    *A.*     *Players* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
    *B.*     *Applicable Plan Language* . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
    *C.*     *Plaintiff's Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*

*V.*     *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
    *A.*     *Liability* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
    *B.*     *Damages* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
        *1.*     *Applicable law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
        *2.*     *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*
    *C.*     *Post-Judgment Interest* . . . . . . . . . . . . . . . . . . . . . . . . . . *12*

      D.    *Attorney Fees and Costs* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*
           1.    *Attorney fees* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*
           2.    *Costs* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *14*
**VI.**   **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**

## *I. INTRODUCTION*

The matter before the court is Plaintiff Peninsula Gaming Company, LLC's "Motion . . . for Entry of Default Judgment" ("Motion") (docket no. 11).

## *II. PROCEDURAL HISTORY*

On November 23, 2010, Plaintiff filed a two-count Complaint (docket no. 2) against Defendants Brad Rabalais and Gauthier, Houghtaling & Williams, LLP ("Gauthier").[1] On December 30, 2010, Plaintiff filed a "Motion . . . For Clerk's Entry of Default" ("Motion for Default Entry") (docket no. 9). In the Motion for Default Entry, Plaintiff stated that Gauthier was properly served on December 1, 2010, and that Rabalais was properly served on December 6, 2010. Plaintiff also filed proof of service with the court. *See* Summonses (docket nos. 7-8). Plaintiff further stated that Defendants failed to file an answer to the Complaint or otherwise defend the action, and the time for doing so expired. *See* Fed. R. Civ. P. 12(a) (stating that a defendant must serve an answer within 21 days after being served with a summons and complaint). Plaintiff therefore requested that the Clerk of Court enter Defendants' default pursuant to Federal Rule of Civil Procedure 55(a). Plaintiff's counsel, Ryan L. Woody, submitted an affidavit with the Motion for Default Entry, averring that Defendants were properly served and that they failed to answer or defend the Complaint. Affidavit of Ryan L. Woody ("Woody Affidavit") (docket no. 9-3) at ¶¶ 4-6. On January 3, 2011, the Clerk of Court entered Defendants' default. *See* Default Entry (docket no. 10); *see also* Fed. R. Civ. P. 55(a) ("When a party

---

[1] Plaintiff named Defendant ABC Corporation as a nominal party. However, because Plaintiff has not pursued its claim against the fictional ABC Corporation, all references to Defendants in the instant Order include only Rabalais and Gauthier.

against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.").

On January 19, 2011, Plaintiff filed the Motion. Defendants have not resisted the Motion, and the time for doing so expired. *See* LR 7.e (stating that a resistance must be filed "within 14 days after the motion is served"); LR 6 (providing an additional three days when service is completed electronically).

### III. SUBJECT MATTER JURISDICTION

The court has federal question subject matter jurisdiction over Plaintiff's claims, which arise under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States.").

### IV. RELEVANT FACTS

#### A. Players

Plaintiff is a Delaware corporation and is the sponsor and administrator of the self-funded Evangeline Downs Health Care Plan ("Plan"). The Plan is an employee welfare benefit plan within the meaning of ERISA, 29 U.S.C. § 1002(1). Self Insured Services Company ("Sisco") is the Plan's claims processor. Sisco is responsible for processing benefit transactions in accordance with the Plan's terms.

Rabalais is a resident of the State of Louisiana and was at all relevant times a Plan member and beneficiary. Gauthier is a Louisiana law firm.

#### B. Applicable Plan Language

The Plan contains a subrogation provision, which provides, in relevant part:

> **Conditions of Payment – Recovery of Benefits**
>
> The Plan provides benefits only on the following conditions:
> . . . .

3

2. The Plan shall have the following cumulative rights and remedies to the full extent of all benefits paid by the Plan in the event that one or more third parties, or one or more insurance companies, workers' compensation or other sources or programs designed or intended to compensate in whole or in part for or to provide benefits because of injuries, illnesses or related expenses, are or may arguably be liable under law or contract to pay damages, compensation or benefits to any Recipient because of an injury or illness in respect to which benefits have been paid by the Plan:

   a. The Plan shall be subrogated to the claim of any Recipient. The Recipient shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

   b. The Recipient shall report any judgment, award, settlement, covenant, release or other payment in whole or in part upon such claim promptly to the Plan. The Plan shall have the following rights in and to the proceeds of any such judgment, award, settlement, covenant, release or other payment received by or on behalf of a Recipient:

      i. The Recipient, as trustee, agrees to hold the proceeds received by him and his legal representative in a trust for the Plan, as beneficiary, and to pay or to direct payment of the same promptly over to the Plan.

      ii. The Recipient grants to the Plan a first lien on the proceeds having priority over the rights of the Recipient and of any third party. The Recipient agrees to take whatever steps are necessary to assist the Plan Administrator or to secure that remedy.

   c. The Plan's rights under paragraphs "a" and "b"

                shall be without reduction, allocation or apportionment because of any expenses, court costs or attorney's fees incurred by the Recipient, fault, or any other reason. No consent or agreement of the Plan to reduce its recovery for any reason shall be implied either in fact or in law by any doctrine or rule of law to the contrary, including but not limited to any "Fund Doctrine," "Common Fund Doctrine," or "Attorney's Fund Doctrine." Except as otherwise agreed by the Plan in writing, the proceeds shall be applied first to the Plan's recovery, whether or not any Covered Individual, Dependent or other Recipient is or would be fully compensated, notwithstanding any "Made-Whole Doctrine," "Rimes Doctrine," or any other law which would otherwise require a Covered Individual, Dependant or other Recipient to be compensated before reimbursement of a subrogee.

    . . . .

    e.    Amounts due the Plan shall accrue interest at the rate of five percent (5%) per annum commencing thirty (30) days after a third party's payment of proceeds of the judgment, award, settlement, covenant or release or other payment, until paid.

    f.    The Plan or its representative on behalf of the Plan shall be entitled to recover its reasonable attorney's fees, litigation expense and costs incurred in any action or suit the Plan litigates against a Recipient in order to secure any right or remedy under these conditions of payment.

Affidavit of Ann M. Cook ("Cook Affidavit") (docket no. 11-2) Exhibit 1 ("Plan") at 50-51.

### *C. Plaintiff's Claims*

On June 6, 2008, Rabalais was injured in a motorcycle accident. Plaintiff alleges

that the Plan paid Rabalais $110,533.07 in benefits for the medical expenses he incurred as a result of the accident. Gauthier represented Rabalais in a Louisiana state tort action, in which Rabalais sought damages for the injuries he sustained in the motorcycle accident. The defendants in the state tort action settled the case with Rabalais. Plaintiff alleges that the amount of Rabalais's settlement in the state tort action exceeded $110,533.07, and that Gauthier "is a [trustee] of the settlement funds, and is in actual and/or constructive control of the funds[.]" Complaint at ¶ 9.

Plaintiff asserts that, pursuant to the terms of the Plan, when a third party, who is liable or arguably liable to pay damages for an injury with respect to which the Plan already paid benefits, makes a payment to the recipient of those benefits, the Plan is entitled to subrogation and reimbursement up to the amount of the benefits paid. Thus, Plaintiff argues that, because Rabalais recovered compensation for his injuries from his settlement of the state tort action, the Plan is entitled to subrogation and reimbursement in the amount of $110,533.07 for the medical benefits it provided Rabalais. Prior to filing suit, Plaintiff sent several letters to Gauthier explaining that the Plan was entitled to subrogation and reimbursement from the settlement funds. Neither Rabalais nor Gauthier reimbursed the Plan.

Plaintiff brings this action pursuant to its authority under ERISA, 29 U.S.C. § 1132(a)(3), which authorizes a plan fiduciary to bring an action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]" In the Motion, Plaintiff seeks: (1) an order of default judgment "[a]gainst Defendants Rabalais and Gauthier in the amount of $110,533.07"; (2) "[a]ttorneys' fees in the amount of $2,520.00"; (3) "[c]osts in the amount of $225.00"; (4) "post-judgment interest"; and (5) "[i]nterest at the rate of five percent (5%) per annum beginning to accrue on October

29, 2010[.]" Motion at 11–12.

## V. ANALYSIS

### A. *Liability*

As noted above, the Clerk of Court entered Defendants' default pursuant to Federal Rule of Civil Procedure 55(a). "Entry of a default under Federal Rule of Civil Procedure 55(a) is not, as such, entry of a judgment; it merely permits the plaintiff to move for a default judgment under Rule 55(b)(2), assuming that the default is not set aside under Rule 55(c)." *Inman v. Am. Home Furniture Placement, Inc.*, 120 F.3d 117, 118 n.2 (8th Cir. 1997). Pursuant to Federal Rule of Civil Procedure 55(b), a default judgment may be entered as follows:

> (1) By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
>
> (2) By the Court. In all other cases, the party must apply to the court for a default judgment. . . . The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
>
> (B) determine the amount of damages;
>
> (C) establish the truth of any allegation by evidence; or
>
> (D) investigate any other matter.

Because Defendants failed to answer or otherwise defend the action, they are deemed to have admitted the well-pleaded allegations of the Complaint. *See Angelo Iafrate*

7

*Const., L.L.C. v. Potashnick Const., Inc.*, 370 F.3d 715, 722 (8th Cir. 2004) (citing *Taylor v. City of Ballwin*, 859 F.2d 1330, 1333 n.7 (8th Cir. 1988)). Consequently, Defendants' liability to Plaintiff is established. *See Brown v. Kenron Aluminum & Glass Corp.*, 477 F.2d 526, 531 (8th Cir. 1973) ("If the court determines that the defendant is in default, his liability to the plaintiff is deemed established and the plaintiff is not required to establish his right to recover. The allegations of the complaint, except as to the amount of damages are taken as true." (internal marks and citation omitted)). The Complaint alleges that the Plan provided Rabalais medical benefits for injuries he sustained when he was in an accident. The Complaint further alleges that Rabalais received settlement funds from a third party who was arguably liable for those injuries and that Gauthier is the trustee of the settlement funds. The Complaint alleges that the Plan is therefore entitled to subrogation from Rabalais and/or Gauthier for the medical expenses it paid. For purposes of the instant Order, these allegations are established as true. *See id*.

### B. Damages

#### 1. Applicable law

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound*, 973 F.2d at 158. The court is not required to accept the allegations of the Complaint regarding damages as true when deciding whether to enter default judgment under Federal Rule of Civil Procedure 55(b). *See Brown*, 477 F.2d at 531; *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004) ("'Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true.'" (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999))). "'The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *In re Catt*, 386 F.3d at 793 (quoting *Credit Lyonnais Sec.*, 183 F.3d at 155).

"[I]n civil litigation between private parties, a party entitled to judgment by default is required to prove the amount of damages that should be awarded." *Oberstar v. Fed. Deposit Ins. Corp.*, 987 F.2d 494, 505 n.9 (8th Cir. 1993). Plaintiff must prove its damages by a preponderance of the evidence. *See Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818-19 (8th Cir. 2001) (affirming district court's decision not to award damages after default judgment hearing where damages were "speculative and not proven by a fair preponderance of the evidence"). The court must afford Plaintiff all reasonable inferences from the evidence offered. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

A district court has the discretion to determine whether an evidentiary hearing is warranted. *See Stephenson v. El Batrawi*, 524 F.3d 907, 917 n.11 (8th Cir. 2008) ("Foregoing an evidentiary hearing may constitute abuse of discretion when the existing record is insufficient to make necessary findings in support of a default judgment."); *United States ex rel. Time Equipment Rental & Sales, Inc. v. Harre*, 983 F.2d 128, 130 (8th Cir. 1993). An evidentiary hearing should be held unless a claim is for a "sum certain," meaning "there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default." *KPS & Assoc., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 19 (1st Cir. 2003). The fact that a complaint makes a demand for a specific dollar amount is insufficient to make it a claim for a sum certain. *See id.* at 20 n.9. However, a court may establish damages "by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and give judgment accordingly." *Pope v. United States*, 323 U.S. 1, 12 (1944).

In ruling on a motion for default judgment in an ERISA case, the court "'may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment.'" *Trustees of the I.B.E.W. Local 405 Health & Welfare Fund v. Tichy Electric Co., Inc.*, No. 07-CV-39-LRR, 2008 WL 154641, at *5 (N.D. Iowa Jan. 15,

9

2008) (quoting *Int'l Painters and Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002)).

### 2. *Application*

In support of the Motion, Plaintiff provided the court with affidavits and other documentary evidence in an effort to demonstrate, by a preponderance of the evidence, that it is entitled to the damages it seeks. Among other evidence, Plaintiff submitted the Cook Affidavit. Cook is a Sisco employee and is responsible for investigating the potential for subrogation and reimbursement where third parties have paid money for injuries that the Plan covered. Cook averred that Rabalais submitted claims to the Plan for medical benefits related to injuries he sustained in a motorcycle accident. Cook averred that Sisco generated a report ("Itemization"), in the regular course of its business, documenting the Plan's payment of those expenses. Cook averred that a true and correct copy of the Itemization, which is attached to the Cook Affidavit as Exhibit 2, demonstrates that the Plan paid $110,533.07 on Rabalais's behalf.

From August 21, 2008 through August 10, 2009, Cook sent five letters to Gauthier, notifying it of the Plan's reimbursement rights. The two most recent letters, dated April 22, 2009 and August 10, 2009, both state that "[t]he balance due to the [Plan] to date is $110,533.07." Cook Affidavit Exhibit 3 at 101, 105. On September 2, 2009, Gauthier sent a letter responding to Cook's letters and explained that he filed the Louisiana state tort action on Rabalais's behalf. Cook sent two more letters to Gauthier on February 12, 2010 and July 27, 2010, reminding Gauthier that the Plan was entitled to subrogation in the amount of $110,533.07, and inquiring about the status of the state tort action. On September 29, 2010, the defendants in the state tort action settled with Rabalais. On that same date, Cook sent Gauthier a letter stating that Gauthier was not entitled to reduce the amount due to the Plan for attorney fees, and reiterating that the amount due to the Plan is $110,553.07.

On October 1, 2010, counsel for the defendants in the state tort action sent Cook a letter stating, "You confirmed that the current amount of the subrogation interest of [the Plan] is $110,553.07. . . . As we discussed, my clients will issue a separate settlement check made payable to the order of [Rabalais], Denelle Rabalais and their attorney and Sisco in the amount of $110,533.07, the amount of your claim." Cook Affidavit Exhibit 6 at 112. Neither Rabalais nor Gauthier have turned over the $110,533.07 owed to the Plan. The Plan provides that, thirty days after a third party makes a payment to which the Plan is entitled reimbursement, the amounts due to the Plan accrue interest at a rate of five percent (5%) per annum.

Upon considering the Cook Affidavit and supporting documentation, the court concludes that Plaintiff's claim is for a sum certain and that no evidentiary hearing is necessary in this case. Sisco generated the Itemization in the regular course of its business in order to thoroughly document each benefit transaction the Plan made on Rabalais's behalf. According to the Itemization, the Plan paid $110,533.07 in medical benefits on Rabalais's behalf. This amount is also reflected in the correspondence between Cook, Gauthier and counsel for the state court defendants. Cook testified that the Itemization is accurate and that it reflects the payments the Plan made on Rabalais's behalf. Thus, Plaintiff's asserted damages in this case are for a sum certain. Consequently, the court shall grant the Motion, insofar as Plaintiff seeks a default judgment against Defendants for $110,533.07, plus interest at the rate of five percent (5%) per annum.

Plaintiff maintains that interest should begin to accrue on October 29, 2010; however, the Plan language makes clear that interest shall begin to accrue 30 days after a third party makes a payment to which the Plan is entitled reimbursement. Because counsel for the defendants in the state tort action sent Cook a letter on October 1, 2010, stating, "my clients will issue a separate settlement check," *id.*, the court concludes that interest shall begin to accrue on October 31, 2010.

11

*C. Post-Judgment Interest*

Plaintiff also seeks post-judgment interest. Pursuant to 28 U.S.C. § 1961, "Interest shall be allowed on any money judgment in a civil case recovered in a district court." Awards of post-judgment interest under 28 U.S.C. § 1961 are mandatory. *See Capella Univ., Inc. v. Exec. Risk Specialty Ins. Co.*, 617 F.3d 1040, 1051-52 (8th Cir. 2010). Post-judgment "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." 28 U.S.C. § 1961(a).[2] The post-judgment interest rate immediately prior to March 16, 2011, the date of entry of final judgment, was .25 percent, the rate set for the week ending March 11, 2011. *See* 28 U.S.C. § 1961; Federal Reserve Statistical Release, http://www.federalreserve.gov/releases/h15/. Pursuant to § 1961(a), the court shall award post-judgment interest at the rate of .25 percent, and it

---

[2] The Plan provides that "[a]mounts due the Plan shall accrue interest at the rate of five percent (5%) per annum commencing thirty (30) days after a third party's payment of proceeds of the . . . settlement . . . until paid." Some courts have held that, despite the seemingly mandatory language in 28 U.S.C. § 1961, parties may contractually agree to a higher post-judgment interest rate. *See, e.g. Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100-101 (2d Cir. 2004). It appears that the Eighth Circuit Court of Appeals has not directly decided the issue. *See In re Acceptance Ins. Companies, Inc.*, No. BK05-80059-TJM, 2011 WL 182849, at *4 (Bankr. D.Neb. Jan. 20, 2011) (declining to allow contractual post-judgment interest rate because, although some "circuits have held that the parties may agree to a rate of interest other than that in 28 U.S.C. § 1961, . . . the Eighth Circuit has not demonstrated an inclination to adopt that proposition"); *Medicine Shoppe Int'l, Inc. v. Rogers*, No. 4:07-CV-445, 2007 WL 2225825, at *2 n.3 (E.D. Mo. July 30, 2007). However, the court need not resolve this issue because, even if parties can contractually agree to a higher rate than that provided in 28 U.S.C. § 1961, Plaintiff does not sufficiently allege that the parties did so in this case. *Cf. Westinghouse*, 371 F.3d at 100; *Medicine Shoppe*, 2007 WL 2225825, at *2 n.3; *BP Prods. N. Am., Inc. v. Youssef*, 296 F. Supp. 2d 1351, 1355-56 (M.D. Fla. 2004); *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 244 F. Supp. 2d 1250, 1275-77 (D. Kan. 2003).

shall accrue on the entire award.

### D. Attorney Fees and Costs

In the Motion, Plaintiff seeks $2,520.00 in attorney fees and $225.00 in costs. In support of its request for attorney fees and costs, Plaintiff submitted the Woody Affidavit and supporting documentation. The documentation includes an itemization of the services that Plaintiff's counsel billed to the Plaintiff by date of service, services performed and time expended. The itemized list of expenditures also sets forth the costs that Plaintiff's counsel incurred in filing the action. The Woody Affidavit attests to the reasonableness of Plaintiff's counsel's hourly rate, and states the costs incurred were both reasonable and necessary.

#### 1. *Attorney fees*

The Plan provides that, "[t]he Plan or its representatives on behalf of the Plan shall be entitled to recover its reasonable attorney's fees . . . in any action or suit the Plan litigates against a Recipient" to enforce its rights to subrogation. Cook Affidavit Exhibit 1 at 51. "'The starting point in determining [reasonable attorney fees] is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates.'" *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005) (quoting *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002)). The lodestar figure is presumed to be the reasonable fee to which counsel is entitled. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993). A reasonable hourly rate is generally the prevailing market rate in the locale, that is, the "ordinary rate for similar work in the community where the case has been litigated." *Moysis v. DTG Datanet*, 278 F.3d 819, 828-29 (8th Cir. 2002) (quoting *Emery v. Hunt*, 272 F.3d 1042, 1047 (8th Cir. 2001)).

"[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing

in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The prevailing party must also proffer evidence of the number of hours reasonably expended on the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

> Inadequate documentation may warrant a reduced fee . . . . Incomplete or imprecise billing records preclude any meaningful review by the district court of the fee application for "excessive, redundant, or otherwise unnecessary" hours and may make it impossible to attribute a particular attorney's specific time to a distinct issue or claim.

*H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991) (quoting *Hensley*, 461 U.S. at 437).

The court finds that Plaintiff's requested attorney fees are reasonable. The Woody Affidavit indicates that Plaintiff's counsel billed $150.00 per hour for their services. The itemized list of expenditures indicates that Plaintiff's counsel expended 16.8 hours on the case, resulting in $2,520.00 in fees. The Woody Affidavit attests to the reasonableness of Plaintiff's counsel's hourly rate, and the court finds the total proposed attorney fee to be reasonable. Accordingly, the court shall award Plaintiff $2,520.00 in attorney fees.

### 2. *Costs*

Under the terms of the Plan, the Plan or its representative is entitled to recover costs incurred in any action to enforce the Plan's subrogation rights. The Woody Affidavit states that Plaintiff spent $225.00 on the filing fee in this action.[3] This expense is also

---

[3] The court notes that the filing fee in this case is $350.00. *See* 28 U.S.C. § 1914(a) (requiring the clerk of each district court to require a party filing a civil action to pay a $350.00 filing fee). The docket also reflects that Plaintiff paid the $350.00 filing fee. *See* text entry at docket no. 2. However, because it appears that Plaintiff's counsel only billed Plaintiff $225.00 for the filing fee, and because Plaintiff only seeks $225.00 in costs, the court will proceed as though Plaintiff only incurred costs in the amount of $225.00.

reflected in Plaintiff's counsel's itemized list of expenditures. The court finds that this cost is compensable. *See* 28 U.S.C. § 1920(1) (authorizing the taxation of costs for the clerk's filing fees). Accordingly, the court shall award Plaintiff $225.00 in costs. *See Trustees of the I.B.E.W. Local 405 Health & Welfare Fund v. Affordable Electric, Inc.*, No. 08-CV-117-LRR, 2009 WL 54559, at *8-9 (N.D. Iowa Jan. 7, 2009) (granting request for costs in ERISA case). *But see* LR 54 (requiring party seeking costs to file a bill of costs with the clerk of court).

## *VI. CONCLUSION*

For the foregoing reasons, it is hereby **ORDERED**:

(1) Plaintiff's Motion for Default Judgment (docket no. 11) is **GRANTED IN PART**;

(2) Defendants are directed to pay Plaintiff $110,533.07 plus pre-judgment interest on such amount at the rate of five percent (5%) per annum, accruing from October 31, 2010 until the date of judgment;

(3) Defendants are directed to pay Plaintiff attorney fees and costs in the amount of $2,745.00;

(4) Post-judgment interest at the rate of .25 percent shall accrue on the total award from the date of judgment through the date that the judgment is paid in full; and

(5) The Clerk of Court is directed to enter judgment accordingly and to **CLOSE THIS CASE**.

**IT IS SO ORDERED.**

**DATED** this 16th day of March, 2011.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA